UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

CARLOS JUAN WILLIAMS,

        Plaintiff,

    v.

WASHINGTON STATE, *et al*,

        Defendants.

Case No.  C07-5216RBL-KLS

REPORT AND
RECOMMENDATION

Noted for March 14, 2008

      This matter has been referred to the undersigned Magistrate Judge pursuant to Title 28 U.S.C. §§ 636(b)(1)(A) and 636(b)(1)(B) and Local Magistrates' Rules MJR 1, MJR 3, and MJR 4.  This matter comes before the Court on defendant's motion to dismiss pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 12(b). (Dkt. #27).  Having reviewed defendants' motion, the parties' respective responses and replies thereto and the remaining record, the undersigned submits the following report and recommendation for the Honorable Ronald B. Leighton's review.

FACTUAL AND PROCEDURAL BACKGROUND

      On May 1, 2007, plaintiff filed a civil rights complaint pursuant to 42 U.S.C. § 1983. (Dkt. #1-#3). On May 10, 2007, the undersigned issued an order directing plaintiff to file an amended complaint curing certain deficiencies found in his original complaint (Dkt. #5), which he did on July 23, 2007 (Dkt. #15). Plaintiff alleges in his amended complaint that in April and May 2007, after being transferred from one cell to another at the Washington Corrections Center ("WCC"), located in Shelton, Washington, he was placed in an unclean cell and did not receive certain of his personal property, including legal materials

1   and an address book, that had been taken during the transfer.  He claims his constitutional rights were

2   violated, and requests injunctive and declaratory relief, as well as compensatory and punitive damages.

3   Defendants filed their motion to dismiss on October 17, 2007, arguing that the amended complaint

4   should be dismissed on the basis that plaintiff has failed to exhaust his administrative remedies under the

5   Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997(e).  Specifically, defendants assert plaintiff

6   failed to exhaust his prison grievance remedies regarding the unclean cell and missing property claims

7   contained in his amended complaint.  On November 14, 2007, plaintiff filed a motion to amend grievance

8   no. 0709954 to eliminate the basis of defendants' motion to dismiss. (Dkt. #28).  In that motion, plaintiff

9   argues he did properly file a grievance regarding his claims, but it was improperly handled by prison staff.

10  As such, plaintiff asserts he has exhausted his administrative remedies.

11  Defendants have filed a response to plaintiff's motion (Dkt. #29), and plaintiff has replied thereto

12  (Dkt. #31).  Accordingly, this matter is now ripe for consideration.

13  <u>DISCUSSION</u>

14  I.   <u>Standard of Review and Opportunity to Develop the Record</u>

15  The PLRA provides that "[n]o action shall be brought with respect to prison conditions" under 42

16  U.S.C. § 1983 by a prisoner "until such administrative remedies as are available are exhausted." 42

17  U.S.C. § 1997e(a).  Since passage of this section of the PLRA, "[e]xhaustion is no longer left to the

18  discretion of the district court, but is mandatory." <u>Woodford v. Ngo</u>, 548 U.S. 81, 126 S. Ct. 2378, 2382

19  (2006) (finding prisoners now must exhaust all available remedies); <u>see also</u> <u>Porter v. Nussle</u>, 534 U.S.

20  516, 524 (2002) ("[E]xhaustion in cases covered by § 1997e(a) is now mandatory.").  "Even when the

21  prisoner seeks relief not available in grievance proceedings," furthermore, "exhaustion is a prerequisite"

22  to filing a civil rights action in federal court. <u>Porter</u>, 534 U.S. at 524.

23  The "proper exhaustion of administrative remedies" requires "using all steps" the prison "holds

24  out, and doing so *properly*," so that the prison "addresses the issues on the merits." <u>Woodford</u>, 126. S.Ct.

25  at 2385 (emphasis in original).  Thus, "[p]roper exhaustion demands compliance with an agency's

26  deadlines and other critical procedural rules." <u>Id.</u> at 2386.  Failure to properly exhaust administrative

27  remedies requires dismissal of the underlying complaint without prejudice. <u>McKinney v. Carey</u>, 311 F.3d

28  1198, 1199 (9th Cir. 2002); <u>Wyatt</u>, 315 F.3d at 1120 (if court concludes that prisoner has not exhausted

1  nonjudicial remedies, proper remedy is dismissal of claim without prejudice); see also Perez v. Wisconsin
2  Dep't of Corr., 182 F.3d 532, 535 (7th Cir. 1999) (suit filed by prisoner before administrative remedies
3  have been exhausted must be dismissed; district court lacks discretion to resolve claim on merits, even if
4  prisoner exhausts intra-prison remedies before judgment).

5         In deciding  whether to grant a motion to dismiss for a failure to exhaust administrative remedies,
6  the Court "may look beyond the pleadings and decide disputed issues of fact." Wyatt v. Terhune, 315
7  F.3d 1108, 1119-20 (9th Cir. 2003).  This is because "[t]he failure to exhaust nonjudicial remedies that
8  are not jurisdictional should be treated as a matter in abatement," and district courts have broad discretion
9  as to the method to be used in resolving factual disputes arising in connection with such matters. Id. at
10  1119; see also Ritza, 837 F.2d at 369.  Therefore, "no presumptive truthfulness attaches to plaintiff's
11  allegations, and the existence of disputed material facts will not preclude" the Court "from evaluating for
12  itself" the claims' merits. Ritza v. International Longshoremen's and Warehousemen's Union, 837 F.2d
13  365, 369 (9th Cir. 1988).  If the Court does look beyond the pleadings "to a factual record in deciding the
14  motion to dismiss for failure to exhaust," however, it "must assure" plaintiff "has fair notice of his
15  opportunity to develop a record." Wyatt, 315 F.3d at 1120 n. 14.

16         The undersigned finds plaintiff has had such notice.  As evidence of this, the undersigned notes
17  that he has submitted with his response to defendants' motion, and with his reply to their response to his
18  motion, documentation in support of his assertion that he did properly file a grievance, at least in regard
19  to the disposition of his property, pursuant to prison policy.  Such documentation goes beyond the
20  pleadings.  In addition, plaintiff has not voiced any objection or concern in his response that he was not
21  provided with a fair opportunity to develop the record here.  Accordingly, the undersigned finds it proper
22  to resolve any factual disputes presented by the parties.

23  II.    Plaintiff Has Failed to Exhaust All of His Administrative Remedies

24         In support of their motion, defendants present the declaration of Devon Schrum, who has been the
25  Washington State Department of Corrections ("DOC") Grievance Program Manager since April 2006.
26  (Dkt. #27-2, p. 2).  Under the DOC's Offender Grievance Program ("OGP"), which has been in existence
27  since the early 1980's, inmates may file grievances over a wide range of aspects of their imprisonment,
28  including the application of DOC policies, rules and procedures, the lack thereof that directly affects the

inmates' living conditions, and the actions of staff. Id.  The OGP also provides a wide range of remedies, including the restitution of property, agreement by DOC officials to remedy objectionable conditions in a reasonable period of time, and changes in policy or procedure. Id. at p. 3.

There are four levels of review under the OGP.  At Level 0, the complaint or informal level:

> The grievance coordinator at the prison receives a written complaint from an offender on an issue about which the offender wishes to pursue a formal grievance.  At this complaint level, the grievance coordinator pursues informal resolution, returns the complaint to the offender for rewriting, returns the complaint to the offender requesting additional information, or accepts the complaint and processes it as a formal grievance.

Id.  "Routine and emergency complaints accepted as formal grievances begin at Level I," where again the "local [prison] grievance coordinator is the respondent." Id.  Inmates then may appeal Level I grievances to Level II, where the prison superintendent is the respondent. Id.  All Level II responses, except for emergency grievances, may be appealed to DOC headquarters. Id. at p. 4.

Ms. Schrum further states that "[t]he DOC's grievance system is well known to inmates," and that plaintiff "is a frequent user of" that system, "having filed over 400 grievances from 1992 to the present." Id.  She states that plaintiff's complaints about being placed in a dirty cell and being denied access to his personal property, including both his legal materials and address book, "are clearly grievable under [the] DOC's grievance system." Id.  However, she also states that the DOC's official grievance records fail to show he filed "any grievances against WCC staff concerning being placed in a dirty cell in April or May 2007." Id.  In addition, Ms. Schrum states that on May 14, 2007, plaintiff "attempted to file grievances against WCC staff concerning his personal property," but they were rejected because he had "failed to comply with [the] DOC's policy that only allows inmates to have a maximum of 5 active greivances pending at any time." Id. at pp. 4-5.

Ms. Schrum goes on to state that "[i]nmates are expected to know and follow  DOC's grievance system rules." Id.  She states that plaintiff "was advised in the grievance responses that he had exceeded the limit of 5 active grievances." Id.  She further states that he "could have dropped one or more of his 5 active grievances and had one or more of his property grievances accepted and processed but he failed to avail himself of this option." Id.  Attached to Ms. Schrum's declaration is a "grievance summary" for plaintiff, which appears to show three grievances concerning property he filed on May 14, 2007, did not go past Level 0 of the DOC's grievance system review process. Id., Attachment A.

1    Attached to plaintiff's complaint are what appear to be copies of the three grievances noted above,

2    as they contain the same grievance numbers listed in Ms. Schrum's declaration and listed on the

3    grievance summary attached thereto. (See Dkt. #15, pp. 11-13).  While much of what plaintiff wrote on

4    those grievances is not entirely legible, the parties do not dispute they concern plaintiff's complaints

5    regarding the disposition of his personal property.  What is generally legible on those grievance copies are

6    the responses by the grievance coordinator informing plaintiff that he has exceeded the total of five

7    grievances that, as noted above, he is allowed to have active at any one time.

8    In the motion he filed in response to defendants' motion, plaintiff states that on April 20, 2007, he

9    had submitted another grievance (No. 0709954) regarding his personal property. (Dkt. #28, p. 1).  Again,

10   the copies of that grievance plaintiff submitted with his motion are not legible. (Id. at pp. 4-5).  Plaintiff

11   states that he filed this grievance at the Stafford Creek Corrections Center ("SCCC"), located in

12   Aberdeen, Washington, after having been transferred there from the WCC.  Plaintiff and defendants both

13   agree that in his response to that grievance, the SCCC grievance coordinator told plaintiff to mail it

14   directly to the WCC. (Dkt. #28, p. 2, #29, p. 2).

15   Plaintiff states that while the grievance appears to have been signed by the grievance coordinator

16   on May 11, 2007, a "record search" would demonstrate he already had been transferred back to the WCC

17   on May 7, 2007. (Dkt. #28, p. 2).  He argues neither of the grievance coordinators at the WCC or SCCC

18   afforded him his right to due process concerning this grievance.  Plaintiff appears to be claiming that

19   while he met all of the requirements for filing the grievance, he never received a response thereto.  He

20   argues without citation that courts have found such failure to respond to an inmate's grievance constitutes

21   exhaustion of administrative remedies.

22   Attached to their reply, defendants have provided a second declaration from Ms. Schrum, in which

23   she agrees that grievance No. 0709954 was filed at the SCCC on April 20, 2007. (Dkt. #29-2).  However,

24   Ms. Schrum further states that the grievance concerned "staff and actions" at the WCC, and that "[u]nder

25   DOC grievance policy, an inmate must file a grievance with the institution where a grievable action

26   occurred." (Dkt. #29-2, p. 2).  Ms. Schrum also states that "[t]he SCCC grievance coordinator properly

27   processed the grievance by advising" plaintiff to mail it to the WCC, but that plaintiff "apparently did not

28   follow" those instructions, as the grievance "only went to level 0." Id.

REPORT AND RECOMMENDATION
Page - 5

1    Plaintiff responded to defendants' reply by providing what he claims to be language that appears

2    on the back page of DOC grievance forms. (Dkt. #31, p. 4).  He asserts that nowhere in that language is

3    anything said about an inmate having to file a grievance with the institution where a grievable action

4    occurred.  Plaintiff also asserts defendants have not provided a copy of the DOC policy which states that

5    requirement.  Thus, plaintiff argues defendants' motion to dismiss must be denied.

6    First, with respect to the three grievances plaintiff filed on May 14, 2007, plaintiff does not

7    dispute that those grievances were rejected because he had exceeded the number of grievances he was

8    allowed to have active at any one time.  Nor does he challenge Ms. Schrum's statement that inmates are

9    allowed to have a maximum of only five active grievances at any one time per DOC policy.  Plaintiff also

10   does not challenge her statement that he could have dropped one or more of his active grievances, and had

11   one or more of his property grievances accepted and processed, but failed to avail himself of this option.

12   Nor has he disputed that none of the three May 14, 2007 grievances went past Level 0 of the DOC's

13   grievance system review process.  As such, at least with respect to those grievances, it appears plaintiff

14   has failed to exhaust all of his available administrative remedies.

15   As to grievance No. 0709954, there does not appear to be any real dispute between the parties that

16   this grievance concerned plaintiff's property disposition, or, at the very least, defendants do not base their

17   argument on any such factual issue.  The parties do disagree, however, on whether DOC policy requires

18   that an inmate must file a grievance at the institution where the grievable action occurred.  As noted

19   above, Ms. Schrum stated in her declaration that such a requirement exists.  Plaintiff counters that there is

20   no statement of this requirement anywhere in language on the back of the grievance forms the DOC

21   provides inmates.  He also points out that defendants have not come forth with a copy of the particular

22   DOC policy containing that requirement.

23   With respect to plaintiff's assertion regarding the language that appears on the back of the DOC's

24   grievance form, even accepting his claim that the copy of the back page language he provided is the same

25   for all DOC grievance forms, including that for grievance No. 0709954, that language merely sets forth

26   those items that are grievable and non-grievable.  That is, there is no indication that the back of the

27   DOC's grievance forms are designed to convey information regarding the DOC's policy on how and

28   where to file grievances.  In other words, the evidence plaintiff has submitted here does not establish that

1   there is no DOC policy requiring grievances to be filed at the institution where the grievable action

2   occurred, or that plaintiff, and inmates in general are not aware of that requirement.  Indeed, as stated by

3   Ms. Schrum, and not denied by plaintiff, he is a frequent user of the grievance system.  As such, plaintiff

4   would be expected to be well aware of the requirements for using that system, whether or not all of the

5   system's requirements are contained on the back of the DOC's grievance forms.

6        It is true, as plaintiff asserts, that defendants have not provided a written copy of the DOC policy

7   they claim requires grievances to be filed at the institution where the grievable action occurred.  However,

8   Ms. Schrum is the Grievance Program Manager for the DOC, and has held that position since April 2006.

9   (Dkt. #27-2, p. 2).  Her position includes responding to questions regarding the inmate grievance program

10  statewide and reporting to DOC officials on the status of the grievance program. Id.  Thus, it is presumed

11  that Ms. Schrum would be well aware of the DOC's policies concerning the grievance system and inmate

12  use thereof.  Indeed, plaintiff has not challenged her expertise in this regard.

13       Even if there is no such DOC policy as plaintiff seems to suggest, there is still no indication in the

14  record that plaintiff exhausted the DOC's grievance system with respect to grievance No. 0709954.  For

15  example, while plaintiff claims he did not receive a proper response to this grievance from the grievance

16  coordinator, it does not appear he attempted to appeal that response or further pursue the matter.  That is,

17  it seems plaintiff did not proceed with the grievance past Level 0.  Plaintiff's allegation that he received

18  an improper response, furthermore, is unpersuasive.

19       Again, for example, plaintiff claims that none of the seven boxes in the grievance coordinator's

20  response section on grievance No. 0709954 were checked.  Plaintiff admits, however, that the grievance

21  coordinator did state on that form: "Mail directly to WCC." (Dkt. #28, p. 2).  In addition, although not

22  legible, it appears this statement was written in the area provided for grievance coordinators to give their

23  explanation for the response. (Id. at p. 5).  While it is true none of the seven boxes appear to be checked,

24  the sixth box states:

25       Additional information and/or rewriting is needed.
         (See below.)  Return within five (5) days or by:
26       Due Date: _____

27  (Id.).  This is the only box that refers to the explanation section in which the grievance coordinator wrote

28  his statement.  Thus, it seems quite clear which box was implicated here.  It also seems clear what was to

1  be expected in terms for further action from plaintiff.  That is, he was being asked to provide additional

2  information or rewrite his grievance within five days, as no more specific date was indicated.  As noted

3  above, however, plaintiff failed to do so.

4  　　　　Plaintiff also makes much of his claimed transfer back to the WCC on May 7, 2007, or four days

5  prior to the date of the grievance coordinator's response.  It is not clear, however, what relevance such a

6  transfer has on his failure to further pursue grievance No. 0709954.  Whether or not plaintiff was at the

7  WCC or SCCC at the time the response was written, plaintiff was told he needed to submit his grievance

8  to the WCC.  The fact that plaintiff would not have had to "mail" the grievance to the WCC at the time of

9  the response because he was already there, again does not change the fact that it was being returned to

10  him for further action on his part.  Nor does plaintiff claim that he did not receive the response so that he

11  never had the opportunity to take such further action.

12  　　　　In regard to plaintiff's claim that neither the WCC or the SCCC grievance coordinator afforded his

13  right to due process concerning grievance No. 0709954, he has not stated what process he was due that he

14  did not receive.  Plaintiff asserts there was a failure to respond to the grievance, even though he complied

15  with all requirements for filing the grievance.  As discussed above, however, plaintiff was provided with a

16  response, though he may not have believed it to have been proper.  Also as discussed above, plaintiff did

17  not pursue the matter further, although he could have.  As to plaintiff's claim that courts have held that a

18  failure to respond to a filed grievance results in a finding that exhaustion of administrative remedies has

19  occurred, he cites to no decisions so holding.  Although at least two district courts have found exhaustion

20  where the prisoner has complied or substantially complied with a prison's grievance procedures, plaintiff

21  again has not done so here. See Abney v. County of Nassau, 237 F.Supp.2d 278 (E.D.N.Y. 2002); Jenkins

22  v. Raub, 310 F.Supp.2d 502 (W.D.N.Y. 2004).

23  　　　　　　　　　　　　　　　　　　CONCLUSION

24  　　　　For the aforementioned reasons, the undersigned recommends that the Court grant defendants'

25  motion to dismiss plaintiff's complaint. (Dkt. #27).  As discussed above, plaintiff has failed to exhaust

26  all available administrative remedies concerning the claims raised therein, and thus his amended

27  complaint (Dkt. #15) should be dismissed without prejudice.

28  　　　　Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedures, the

parties shall have ten (10) days from service of this Report and Recommendation to file written objections thereto. <u>See also</u> Fed.R.Civ.P. 6.  Failure to file objections will result in a waiver of those objections for purposes of appeal. <u>Thomas v. Arn</u>, 474 U.S. 140 (1985).  Accommodating the time limit imposed by Fed. R. Civ. P. 72(b), the clerk is directed set this matter for consideration on **March 14, 2008**, as noted in the caption.

DATED this 21st day of February, 2008.


Karen L. Strombom
United States Magistrate Judge